1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DARIO MARTINEZ-CASTRO,

                          Petitioner,

          v.

JASON BENNETT,

                          Respondent.

Case No. C23-256-JNW-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a federal habeas action filed under 28 U.S.C. § 2254. Petitioner Dario

Martinez-Castro ("Petitioner"), proceeding *pro se*, is currently incarcerated at the Stafford Creek

Corrections Center ("SCCC") in Aberdeen, Washington. Petitioner seeks relief under 28 U.S.C.

§ 2254 from a 2020 judgment and sentence of the King County Superior Court. (Am. Pet. (dkt.

# 20).) On October 10, 2023, Respondent filed an answer and memorandum of authorities to

Petitioner's habeas petition ("Respondent's Answer") (Answer (dkt. # 21)) and submitted the

State Court Record (State Court Rec. (dkt. # 22)). On November 21, 2023, Petitioner filed a

response to Respondent's Answer ("Petitioner's Response"). (Pet.'s Resp. (dkt. # 25).)

REPORT AND RECOMMENDATION - 1

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends that: (1) Petitioner's amended habeas petition (dkt. # 20) be DENIED; (2) this action be DISMISSED with prejudice; and (3) a certificate of appealability be DENIED as to all claims.

## II.    BACKGROUND

### A.    Statement of Facts

Petitioner is in custody under a state court judgment and sentence entered by the King County Superior Court for his conviction on one count of first-degree murder. (*See* State Court Rec., Ex. 1 (dkt. # 22-1) at 1.) The Washington Court of Appeals ("Court of Appeals"), on Petitioner's direct appeal, summarized the relevant facts underlying his convictions as follows:

> On April 7, 2017, 18-year-old Dario Martinez-Castro attended a party at Marcos Rojas's house. At the party, Martinez-Castro and another attendee, Pedro Ramirez-Perez, engaged in a physical fight. Shortly after, Martinez-Castro left the party.
>
> About 15 minutes later, Martinez-Castro returned to the party, shot Ramirez-Perez multiple times, and fled. Ramirez-Perez died. Multiple witnesses told the responding officers that Martinez-Castro was responsible.
>
> On the morning of April 8, with the assistance of Martinez-Castro's family, Federal Way Police Officer Justin Gregson spoke with Martinez-Castro on the phone and later contacted him in the parking lot of a nearby restaurant. Officer Gregson read Martinez-Castro *Miranda* warnings and then asked, "[D]o you understand each of these rights I have explained to you?" and "Having these rights in mind, do you wish to talk to us now?" Martinez-Castro responded affirmatively to both questions. Officer Gregson transported Martinez-Castro to the Federal Way police station.
>
> At the station, Detective Heather Castro and Detective Mathew Novak interviewed Martinez-Castro. Detective Castro started the interview by stating, "I have some formal stuff that we will go through, and then we'll just sit and talk, okay?" Detective Castro proceeded by confirming Martinez-Castro's identity, contact information, and advising Martinez-Castro that the interview was being audio and video recorded. Detective Castro then reread Martinez-Castro his *Miranda* warnings. Martinez-Castro verbally acknowledged that he understood his

rights and also signed a written waiver. He again affirmatively agreed to speak with detectives.

During the interview, Martinez-Castro admitted to attending the party but stated that after the "fist fight," he left and went to a friend's house to sleep. At some point during the interview, Martinez-Castro gave the detectives permission to search his cell phone, but he later invoked his right to stop the search. The detectives complied.

Throughout the interview, after either a long silence, new information, an intentional escalation or de-escalation of "emotional tenor," or a break in questioning, Detective Castro asked Martinez-Castro, "Is there anything else you would like to add?" Martinez-Castro consistently responded, "No." Detective Castro also used various interview tactics during the interrogation such as hypothetically discussing crimes Martinez-Castro could be charged with and "[a]ppealing to his emotional side" by bringing up his mother. Despite the detectives' tactics, Martinez-Castro denied killing Ramirez-Perez.

After Detective Castro and Detective Novak completed their interrogation, Detective Adam Howell interviewed Martinez-Castro. Shortly after Detective Howell's arrival, Martinez-Castro invoked his right to counsel. All questioning stopped.

A few days later, Detective Castro submitted an affidavit and applied for a warrant to search Martinez-Castro's cell phone. The trial court issued the 2017 search warrant. Detective Michael Coffey executed the search using Cellebrite, a software program designed to retrieve data from encrypted devices. Detective Coffey did not uncover any useful information.

About a year later, Detective Castro overheard other officers in the department discussing an update to the Cellebrite software that potentially could recover "more information" from an encrypted device.

On December 3, 2018, Detective Castro submitted an affidavit and applied for a second warrant to search Martinez-Castro's cell phone. The trial court issued the 2018 search warrant. Detective Thien Do executed the search using the updated version of the Cellebrite software. Detective Do uncovered incriminating text messages on Martinez-Castro's phone that had been deleted. Martinez-Castro filed a CrR 3.6 motion to suppress the incriminating messages.

Before the trial court ruled on the CrR 3.6 motion, the prosecutor realized that Detective Castro's affidavit in support of the 2018 warrant was problematic. As a result, on May 14, 2019, Detective Coffey submitted an affidavit and applied for a third warrant to search Martinez-Castro's cell phone. The trial court issued the 2019 search warrant. Detective Coffey uncovered the same incriminating deleted text messages.

REPORT AND RECOMMENDATION - 3

1

2

3

4

5

6

7

8

9

       The trial court granted Martinez-Castro's CrR 3.6 motion to invalidate the 2018 search warrant because Detective Castro misrepresented the extent of her personal knowledge and experience with the Cellebrite software. The court concluded that the 2019 search warrant was valid because the independent source doctrine applied and therefore, the incriminating deleted text messages were admissible.

       Martinez-Castro also filed a CrR 3.5 motion to suppress various statements he made during the interviews with law enforcement. The court concluded that there were no "threats, coercions, or promises made" and that the officers "did not overbear Martinez-Castro's free will," and therefore, his statements to the officers were admissible.

       At trial, during rebuttal argument, the prosecutor recommended that the jurors acknowledge their emotions surrounding the case but ultimately render a decision based only on the evidence presented. Martinez-Castro did not object. The jury found Martinez-Castro guilty of first[-]degree murder.

10

(*See* State Court Rec., Ex. 2 at 2-6 (footnotes omitted).)

11

**B.    Procedural History**

12

Petitioner appealed his conviction and sentence to the Court of Appeals. (State Court

13

Rec., Exs. 3-5.) On October 25, 2021, the Court of Appeals issued an unpublished opinion

14

affirming Petitioner's conviction. (*Id.*, Ex. 2 at 25.)

15

Petitioner next sought review by the Washington Supreme Court. (State Court Rec., Ex.

16

6.) Petitioner presented the following issues to the Washington Supreme Court:

17

18

19

20

    1.    Under article I, section 7 of the Washington Constitution and the independent source doctrine, must evidence of deleted text messages be excluded when 1) the messages were found during execution of an unconstitutional search warrant; 2) after realizing the warrant might be invalid, the prosecutor requested a new warrant; and 3) the prosecutor sought the new warrant precisely because he wanted to "re-find" the deleted messages and use them at trial?

21

22

23

    2.    Under the Fifth Amendment and article I, section 9 of the Washington Constitution, did the court err in admitting Martinez-Castro's statements to police when 1) Martinez-Castro had just turned 18 years old; 2) the police had forced his entire family out of their home; 3) the prosecutor dismissed the Miranda[] warnings as "formal stuff;" 4) detectives suggested he could only avoid a life sentence by continuing talking; 5) Martinez-Castro said he

1
2
had nothing more to say, yet the interrogation continued; 6) detectives told Martinez-Castro this would be his only chance to tell his side of the story?

3.    Prosecutors may not urge the jury to render a verdict grounded in their emotions. Did the prosecutor commit misconduct when he urged jurors to discuss their emotions during deliberations before setting them aside to render a verdict?

3
4
5    (*Id.* at 7-8.) On March 2, 2022, the Washington Supreme Court denied review without comment.

6    (*Id.*, Ex. 7.) On March 16, 2022, the Court of Appeals issued the mandate terminating direct

7    review. (*Id.*, Ex. 8.)

8        On February 3, 2023, Petitioner, proceeding *pro se*, filed a "Motion to Correct Judgment

9    and Sentence" in the King County Superior Court on the basis the trial court abused its discretion

10    in failing to consider his youthfulness at sentencing. (State Court Rec., Ex. 9.) Petitioner's

11    motion was transferred to the Court of Appeals to be heard as a personal restraint petition on

12    February 24, 2023. (*Id.*, Ex. 10.)

13        On April 27, 2023, Petitioner filed his federal habeas petition in this Court along with a

14    motion to stay. (*See* dkt. ## 3, 11.) On May 17, 2023, this Court granted Petitioner's motion to

15    stay to allow him to exhaust his state court remedies. (Dkt. # 16.)

16        On May 22, 2023, the Court of Appeals dismissed Petitioner's personal restraint petition

17    as frivolous. (State Court Rec., Ex. 11.) Petitioner subsequently sought discretionary review by

18    the Washington Supreme Court. (*Id.*, Ex. 12.) Petitioner raised only one ground to the

19    Washington Supreme Court in seeking discretionary review: "Did the Court of Appeals commit

20    an obvious error dismissing the petition based on the erroneous determination that the trial court

21    exercised its judgment, when in fact the trial court asserted its belief that 'the court lacks the

22
23

1    discretion'" (*Id.* at 1.) On June 27, 2023, the Washington Supreme Court denied review.[1] (*Id.*,

2    Ex. 13.)

3        On August 18, 2023, this Court lifted the stay on Petitioner's habeas petition and allowed

4    him to file an amended habeas petition, which Petitioner filed on September 6, 2023. (*See* dkt.

5    # 19; Am. Pet.) This matter is now ripe for federal habeas review.

### III.    GROUNDS FOR RELIEF

7        Petitioner's amended habeas petition identifies the following grounds for relief:

8        1.    Illegal search and seizure resulting in subsequent admission of evidence
             which is fruit of the poisonous tree. (Am. Pet. at 6-8.)

9

10        2.    Petitioner's statements to police were involuntary and coerced. (*Id.* at 8-9.)

11        3.    Trial court abused its discretion, failing to consider Petitioner's youth as a
             mitigating factor for sentencing purposes based upon an erroneous view of
             the law and applying the wrong legal standard. (*Id.* at 9-11.)

### IV.    DISCUSSION

13        Respondent concedes that Petitioner properly exhausted his state court remedies on his

14    grounds for relief because he fairly presented his claims to the Washington Supreme Court as

15    federal claims. (*See* Answer at 6.) Respondent also concedes that Petitioner timely filed his

16    habeas petition under 28 U.S.C. § 2244(d). (*See id.* at 7.) Respondent, however, contends that

17    none of Petitioner's claims provide any basis for federal habeas relief. (*See id.* at 8-22.)

18    A.    **Standard of Review**

19        Federal habeas corpus relief is available only to a person "in custody in violation of the

20    Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus

21

22
    _____
23    [1] Though not contained in the State Court Record, based upon this Court's review of the Court of
    Appeals' docket, it appears the Court of Appeals issued a certificate of finality on Petitioner's personal
    restraint petition on November 1, 2023. *See* Certificate of Finality, *Matter of Martinez-Castro*, Court of
    Appeals Cause No. 85078-4-I.

REPORT AND RECOMMENDATION - 6

1    petition may be granted with respect to any claim adjudicated on the merits in state court only if

2    the state court's decision was contrary to, or involved an unreasonable application of, clearly

3    established federal law, as determined by the Supreme Court, or if the decision was based on an

4    unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

5         Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

6    court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

7    or if the state court decides a case differently than the Supreme Court has on a set of materially

8    indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

9    "unreasonable application" clause, a federal habeas court may grant the writ only if the state

10   court identifies the correct governing legal principle from the Supreme Court's decisions, but

11   unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

12        The Supreme Court has made clear that a state court's decision may be overturned only if

13   the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

14   The Supreme Court has also explained that "[a] state court's determination that a claim lacks

15   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

16   correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

17   (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

18        Clearly established federal law means "the governing legal principle or principles set

19   forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S.

20   at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

21   legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

22   to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

23   952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

1    In considering a habeas petition, this Court's review "is limited to the record that was

2    before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

3    170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

4    state court, such determination shall be presumed correct, and the applicant has the burden of

5    rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

6    **B.    Analysis**

7         *i.    Ground One: Illegal search and seizure*

8    Petitioner asserts in his first ground for relief that the admission of evidence from his

9    cellphone was improper. (Am. Pet. at 6.) Petitioner argues the 2019 search warrant used to

10   identify deleted text messages submitted at his criminal trial was premised on knowledge

11   gathered from the 2018 search warrant, which the trial court invalidated based on Detective

12   Castro's misrepresentations as to the extent of her knowledge and experience with the Cellebrite

13   software. (*Id.*)

14   Respondent argues Petitioner's challenge to the search warrant used in this matter is

15   barred pursuant to *Stone v. Powell*, 428 U.S. 465 (1976) as Petitioner had an opportunity for "full

16   and fair litigation of this claim in state court." (Answer at 12.) Petitioner responds that he was

17   not provided an opportunity for "full and fair litigation" of this claim based on the Washington

18   state courts' application of an incorrect legal standard. (Pet.'s Resp. at 1-3.)

19   Here, Petitioner's first ground for relief is clearly barred under *Stone*. Where the State has

20   provided an opportunity for "full and fair litigation of a Fourth Amendment claim, a state

21   prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in

22   an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494; *see also*

23   *Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005). Therefore, the relevant inquiry is

1  whether the petitioner was afforded a full and fair hearing, not whether the state court reached a

2  correct resolution. *See Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994); *Gordon v.*

3  *Duran*, 895 F.2d 610, 613 (9th Cir. 1990).

4         The record demonstrates Petitioner sought exclusion of any evidence obtained through

5  the search of his cell phone in the trial court under Washington Superior Court Criminal Rule

6  ("CrR") 3.6, which provides a process for criminal defendants to seek to suppress unlawfully

7  obtained evidence.[2] (State Court Rec., Ex. 2 at 5.) As noted, Petitioner successfully argued the

8  2018 search warrant was invalid because Detective Castro misrepresented the extent of her

9  personal knowledge and experience with the Cellebrite software. (*Id.*) But the trial court

10  concluded the 2019 search warrant remained valid because the independent source doctrine

11  applied, and thus, the deleted text messages were admissible at trial. (*Id.*) Petitioner further

12  pursued his suppression claims in the Court of Appeals on direct appeal, which the Court of

13  Appeals also rejected pursuant to the independent source doctrine. (*See id.* at 6-15.)

14         Given the record of Petitioner's challenges on this issue in the Washington state courts,

15  Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. Consequently,

16  his suppression claim under the Fourth Amendment is not cognizable in this habeas action. *See*

17

18  _____

19  [2] Washington CrR 3.6 provides that:

20         (a) Pleadings. Motions to suppress physical, oral or identification evidence, other than
       motion pursuant to rule 3.5, shall be in writing supported by an affidavit or document
       setting forth the facts the moving party anticipates will be elicited at a hearing, and a

21     memorandum of authorities in support of the motion. Opposing counsel may be ordered
       to serve and file a memorandum of authorities in opposition to the motion. The court

22     shall determine whether an evidentiary hearing is required based upon the moving papers.
       If the court determines that no evidentiary hearing is required, the court shall enter a
       written order setting forth its reasons.

23
       (b) Hearing. If an evidentiary hearing is conducted, at its conclusion the court shall enter
       written findings of fact and conclusions of law.

1   *Stone*, 428 U.S. at 494 n.37. The Court therefore recommends Petitioner's first ground for habeas

2   relief be denied.

3           ii.        *Ground Two: Petitioner's statements to police were involuntary and*
                       *coerced*
4

5           Next, Petitioner challenges whether he made a knowing, intelligent, and voluntary waiver

6   of his *Miranda* rights when he spoke to the police. (Am. Pet. at 8.) Petitioner argues that

7   statements he made to police were admitted at trial but elicited only after he repeatedly informed

8   the police that he did not have more to say, and that he was pressured into talking based on the

9   insinuation that his charges could be reduced to manslaughter. (*Id.*)

10          Respondent argues Petitioner fails to show the state court adjudication of this claim was

11  an unreasonable application of clearly established federal law, or based on an unreasonable

12  determination of facts, because the state court reasonably determined Petitioner was informed of

13  his *Miranda* rights, validly waived those rights, and made voluntary statements to police before

14  invoking his rights. (Answer at 13-19.) Petitioner responds that Detective Castro's interrogation

15  tactics nonetheless "invalidated [his] waiver of his *Miranda* rights," that the police's "implicit

16  threats" coerced him into waiving his right to remain silent based on his youthfulness, and that

17  Detective Castro minimized the significance of his *Miranda* rights by referring to them as

18  "formal stuff." (Pet.'s Resp. at 3-8.)

19          The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any

20  criminal case to be a witness against himself." U.S. Const. amend. V. This privilege applies in

21  the context of custodial interrogations, *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), and is

22  binding on the states, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). In *Miranda*, the Supreme Court

23  identified procedural safeguards which must precede an in-custody interrogation. 384 U.S.

    at 460-61. Specifically, the police must advise a person who has been taken into custody, or

REPORT AND RECOMMENDATION - 10

1   deprived of his freedom in any significant way, of his right to remain silent and his right to the

2   presence of an attorney during questioning. *Id.* at 444. An individual may waive these rights if

3   the waiver is made voluntarily, knowingly, and intelligently. *Id.*

4          A waiver is voluntary if "it was the product of a free and deliberate choice rather than

5   intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A waiver is

6   knowing and intelligent if it was "made with a full awareness of both the nature of the right

7   being abandoned and the consequences of the decision to abandon it." *Id.* A waiver may be

8   express or implied. *See North Carolina v. Butler*, 441 U.S. 369, 373-74 (1979). "Only if the

9   totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and

10  the requisite level of comprehension may a court properly conclude that the *Miranda* rights have

11  been waived." *Moran*, 475 U.S. at 421 (internal quotation and citations omitted).

12         A state court's factual determinations underlying the issue of voluntariness are entitled to

13  a presumption of correctness. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). However, the ultimate

14  issue of voluntariness raises a legal question requiring independent federal determination. *Id.*

15         The Court of Appeals rejected Petitioner's claim that he did not make a knowing,

16  intelligent, and voluntary waiver of his *Miranda* rights in Petitioner's direct appeal. Specifically,

17  the Court of Appeals found as follows on Petitioner's direct appeal:

18         Martinez-Castro challenges four findings of fact related to *Miranda*
    warnings.

19

20         First, Martinez-Castro challenges two findings of fact related to whether
    Detective Castro's interrogation tactics invalidated Martinez-Castro's waiver of his
    *Miranda* rights. Finding of fact 13 is that at one point during interrogation,

21  Detective Castro referred to *Miranda* warnings as "formal stuff," and that reference
    did not invalidate Martinez-Castro's waiver that he provided initially to Officer

22  Gregson and later to Detective Castro. Finding of fact 20 is that several times during
    interrogation, Detective Castro asked Martinez-Castro if "he had anything further

23  to say," and he consistently answered "No," but that exchange never constituted an
    unequivocal invocation of *Miranda*.

The court's undisputed finding of fact 6 is that "[r]egarding the advisements provided by Officer Gregson, Martinez-Castro clearly manifested his understanding of his rights and his willingness to talk." And undisputed findings of fact 9 and 10 are that Detective Castro read Martinez-Castro his *Miranda* warnings for a second time, and the second advisement was "consistent with the law and requirements of *Miranda*."

And Detective Castro testified that during interrogation, when she asked Martinez-Castro if he "had anything else [he wanted] to add," she did so in the context of the information he previously provided. The court noted that although it found Detective Castro's testimony to be "less credible," undisputed finding of fact 18 is that most of the interactions between Martinez-Castro and "law enforcement were recorded, and the [c]ourt had the ability to rely on the recordings and not, for the most part, the memory of Detective Castro as she recounted these events. The [c]ourt therefore does not find the concerns about Detective Castro's credibility to be dispositive." Substantial evidence supports findings of fact 13 and 20.

Martinez-Castro also challenges two findings of fact related to the voluntariness of his *Miranda* waiver. Finding of fact 12 is that Martinez-Castro "was properly advised of his rights and knowingly, freely, intelligently, and voluntarily waived his rights." Finding of fact 21 includes that "Martinez-Castro's statements were voluntarily made," that an officer's "psychological ploy . . . may play a part in a suspect's decision to confess," and that there were no "threats, coercions, or promises made, at least not that exceeded the lawful scope of a police interrogation."

Here, when Officer Gregson first made contact with Martinez-Castro in the parking lot, he testified that he read Martinez-Castro his constitutional rights from the department-issued *Miranda* card. Officer Gregson also stated that the department-issued card lists the *Miranda* advisements "verbatim," and that he uses it in the "same way with every person [he mirandizes]." Immediately after reading Martinez-Castro his *Miranda* warnings, Officer Gregson asked Martinez-Castro if he understood "each of [the] rights," and Martinez-Castro "acknowledged his rights [and] stated he understood them." When Officer Gregson asked Martinez-Castro if he was "willing to talk," Martinez-Castro answered affirmatively.

Officer Gregson testified that he never made "any sort of promises to try to get [Martinez-Castro] to talk." Undisputed finding of fact 3 is that Officer Gregson's "advisement was proper and legally accurate under *Miranda*."

Additionally, at the beginning of the interrogation, after confirming Martinez-Castro's identity, contact information, and advising him that the interview was being recorded, Detective Castro testified that she reread Martinez-Castro his *Miranda* warnings. Detective Castro then asked, "And having these rights in mind, do you wanna talk to me?" Martinez-Castro replied, "Sure."

He then signed a written waiver. Throughout the interrogation, Detective Castro testified that she did not make any promises to Martinez-Castro in an effort to persuade him to confess. Detective Novak confirmed that during interrogation, there were not any "threats or promises" made to Martinez-Castro "off camera." And Detective Howell testified that during his interview with Martinez-Castro, he never made Martinez-Castro any promises so that he would talk, nor did he "make any threats or coerce him." The court found Officer Gregson and Detective Howell credible. And the court's oral findings state that when balancing Martinez-Castro's "youthfulness" and "inexperience with the system" against "the tone and demeanor of the officers," that based upon the totality of the circumstances, Martinez-Castro "was not overborne by the tactics used by law enforcement." Substantial evidence supports findings of fact 12 and 21.

The court's legal conclusion that "the State has proven by a preponderance of the evidence that there was proper advisement of *Miranda* warnings, that the ensuing conversation was voluntary, and that it was a product of a knowing, intelligent, and voluntary waiver of *Miranda* rights by Martinez-Castro" is supported by the court's findings of fact 12, 13, 20, and 21. The court properly concluded that Martinez-Castro's statements while speaking to Officer Gregson on the phone prior to his arrest, his statements made to Officer Gregson, and his statements made during the audio and video recorded interrogation until he invoked his right to counsel were admissible.

Martinez-Castro argues that Detective Castro and Detective Howell engaged in "unacceptable coercion by implicitly threatening Martinez-Castro's family" and by "implicitly [threatening him] with life in prison if he did not submit to questioning." Detective Castro admitted that she brought up Martinez-Castro's mother during the interview to appeal to "his emotional side," and that she discussed potential crimes he could be charged with in an attempt to make him "talk." But "[d]eception alone does not make a statement inadmissible as a matter of law; rather, the inquiry is whether the deception made the waiver of constitutional rights involuntary." [*State v. Burkins*, 94 Wn. App. 677, 695 (1999) (citing *State v. Gilcrist*, 9 Wn.2d 603, 607 (1979)).] Because Martinez-Castro consistently invoked his rights throughout the interrogation, the officers' deceptive tactics did not render the waiver of Martinez-Castro's *Miranda* rights involuntary.

(State Court Rec., Ex. 2 at 16-21 (footnotes omitted).)

On this claim, the state courts' determination that Petitioner's waiver of his *Miranda* rights was knowing and intelligent is a finding of fact subject to the presumption of correctness set forth in § 2254(e)(1). Petitioner fails to rebut this presumption by clear and convincing evidence.

REPORT AND RECOMMENDATION - 13

1    The record before the Court adequately supports that Petitioner understood and

2    voluntarily waived his *Miranda* rights. Detective Castro testified during pretrial proceedings that

3    after advising Petitioner of his *Miranda* rights, Petitioner did not invoke his rights or remain

4    silent during her discussion with him. (*See* State Court Rec., Ex. 17 at 41-43.) Detective Castro

5    testified Petitioner did not express confusion about his *Miranda* rights and testified that in a later

6    interview with Detective Howell, Petitioner showed his understanding of his *Miranda* rights by

7    invoking them. (*Id.* at 52.) Furthermore, Detective Castro testified she never threatened or

8    coerced Petitioner and that she brought up Petitioner's mother as an emotional appeal, but that

9    Petitioner still maintained that he had not shot the victim in their conversation. (*Id.* at 54, 57.)

10    Detective Novak testified Petitioner did not invoke his *Miranda* rights in their

11    conversation, and that no one threatened Petitioner, or made him any promises, during the

12    interview. (State Court Rec., Ex. 17 at 96-98.) Officer Gregson testified that he advised

13    Petitioner of his *Miranda* rights, and that Petitioner did not invoke those rights in their

14    conversation. (*Id.* at 118-20.) Petitioner instead told Officer Gregson that he understood his

15    rights and that he wanted to talk. (*Id.* at 119, 135-36.) Finally, Detective Howell testified that

16    Petitioner was not intoxicated, appeared to comprehend their conversation, and that he rationally

17    answered questions posed to him. (*Id.* at 204.) During Detective Howell and Petitioner's

18    conversation, Petitioner requested an attorney, at which point the interview ceased. (*Id.* at 205.)

19    Given the pretrial hearing testimony, the trial court determined the police adequately

20    informed Petitioner of his *Miranda* rights, that Petitioner knowingly and intelligently waived

21    those rights, and that Petitioner voluntarily spoke with the detectives. (*See* State Court Rec., Ex.

22    17 at 257-67.) Based on the trial court's determinations, the Court of Appeals reasonably rejected

23

Petitioner's claim that his statements were involuntary or otherwise coerced. (*See* State Court Rec., Ex. 2 at 16-21.)

While Petitioner maintains the viability of his interpretation of the evidence as demonstrating he was coerced, the record fails to evince that the trial court's determination as to the credibility of the detective's and officer's testimony, or the state courts' ultimate decision on this issue, was unreasonable. Because the state courts reasonably rejected Petitioner's *Miranda* claim, Petitioner's federal habeas petition should be denied with respect to his second ground for relief.

     iii.    *Ground Three: Trial court failed to consider Petitioner's youth as mitigating factor for sentencing purposes*

Finally, Petitioner alleges the sentencing judge failed to consider his youthfulness in imposing his sentence. (Am. Pet. at 9.) Petitioner notes he turned 18 years old only two weeks before the murder occurred, and he contends that the trial court erroneously found it could not consider his youth as a mitigating factor. (*Id.*) Respondent counters that this claim raises an issue of state law, and in any case, Petitioner fails to state a violation of clearly established federal law pursuant to § 2254(d). (Answer at 19-20.) Petitioner responds that though he cited to Washington state law for this challenge in his state court proceedings, federal law gives "the trial court authority to consider youthfulness at sentencing proceedings."[3] (Pet.'s Resp. at 8-9.)

Federal habeas relief is available only if a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(c)(3); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A challenge to the state court's application

---

[3] With regard to his personal restraint petition on this claim, Petitioner notes he cited to the Washington Supreme Court's decision in *State v. O'Dell*, 183 Wn.2d 680 (Wash. 2015), which he argues was premised on federal law pursuant to the U.S. Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005). (Pet.'s Resp. at 8-9.)

1   of state sentencing laws does not create a federal question cognizable on federal habeas review.

2   *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). To state a cognizable federal habeas claim based

3   on an alleged sentencing error by a state court, a habeas petitioner must show that the asserted

4   sentencing error was "'so arbitrary or capricious as to constitute an independent due process'"

5   violation. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (citation omitted).

6           Here, the Court of Appeals rejected Petitioner's sentencing claim in his personal restraint

7   proceedings on the basis of Washington state law, finding that:

8           Here, the record reveals that the trial court considered Martinez-Castro's
        age and youthfulness prior to imposing his sentence. In his presentencing pleading,
9       Martinez-Castro argued that the following two "mitigating circumstances provide
        the court substantial and compelling reasons to impose a sentence below the adult
10      standard range," including: (1) he "was 17 days past the age of a juvenile at the
        time of the offense," and (2) his "youthfulness and the characteristics of youth were
11      central to commission of the crime."

12          Martinez-Castro's pleading also discussed his family history, abusive
        father, need for counseling as a minor, diagnosis of Attention Deficit Hyperactivity
13      Disorder, placement in an Individualized Education Program while in school,
        language barrier at home, and his mom's incarceration and possible deportation.
14      Moreover, he addressed pertinent legal authority including, among others: *State v.
        O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015) ("age is not a per se mitigating
15      factor automatically entitling every youthful defendant to an exceptional sentence,"
        a trial court is permitted to consider youth as a mitigating factor); and *State v.
16      Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017) (courts sentencing juveniles
        must have discretion to impose any sentence below the applicable standard range
17      and enhancements). His pleading concluded with a recommendation for 240
        months of total confinement, as follows:

18
19          While Dario was of an age that technically makes him an adult at
        the time of the offense, the caselaw, recognizing the science and
20      psychology of juvenile brains, puts the age of adulthood far close
        [sic] to the age of 25 than 18. The standard sentencing ranges and
21      otherwise mandatory firearm enhancements should not apply. 240
        months is a [sic] more than the number of months Dario was alive
22      at the time of this crime. It is more than adequate to [sic] while still
        allowing Dario an opportunity to rehabilitate and placing him at an
23      age that lowers the risk of recidivism.


REPORT AND RECOMMENDATION - 16

1        The State filed a pre-sentencing pleading that recommended 350 months of
2   confinement. It argued that Martinez-Castro's crime was premeditated and was not
    influenced by the hallmarks of youth. Additionally, it argued that Martinez-Castro's
3   mandatory minimum sentence was 25 years for first degree murder, and the 5-year
    mandatory firearm enhance had to run consecutively to the murder sentence. *See In
4   re Pers. Restraint of Davis*, 200 Wn.2d 75, 83-86, 514 P.3d 653 (2022) (sentencing
    court exercised discretion where defendant received a mandatory minimum term
5   and a firearm enhancement); *State v. Hart*, 453, 462-64, 353 P.3d 253 (2015)
    (affirmed that mandatory sentencing penalties apply to offenders who are 18 years
6   and older because they are not juveniles); RCW 9.94A.540(1)(a) ("An offender
    convicted of the crime of murder in the first degree shall be sentenced to a term of
7   total confinement not less than twenty years."); RCW 9.94A.533(3)(a), (e) (the
    firearm enhancement has a 5-year mandatory minimum, which "shall run
    consecutively to all other sentencing provisions").

8
9        After considering the competing pre-sentence pleadings, it is apparent that
    the trial court considered Martinez-Castro's age and youthfulness before it imposed
10  the sentence. The trial court exercised its discretion to impose the mandatory
    minimum of 240 months for the murder when it had discretion to impose a sentence
11  of up to 320 months for that offense. The trial court was obligated to impose a
    mandatory minimum of 60 months for the firearm enhancement.

12  (State Court Record, Ex. 11 at 2-4.)

13       In denying discretionary review, the Washington Supreme Court also agreed Petitioner

14  failed to demonstrate any error with his sentence:

15       To obtain review of the Court of Appeals decision, Martinez-Castro must
    show that the chief judge's decision conflicts with a decision of this court or with a
16  published Court of Appeals decision, or that Martinez-Castro is raising a significant
    constitutional question or an issue of substantial public interest. RAP 13.5A(a)(1),
17  (b); RAP 13.4(b). He does not make this showing. The superior court imposed the
    shortest prison sentence it could have: 20 years for the murder and a consecutive
18  five years for a firearm enhancement, for a total of 25 years. See RCW
    9.94A.540(1)(a) (mandatory minimum term of 20 for first degree murder); RCW
19  9.94A.533(3)(a), (e) (five years for firearm enhancement for class A felony, which
    must be served consecutively). Although the superior court was presented with
20  youth as a mitigating factor at sentencing, Martinez-Castro argues that the court
    erred in believing it had no discretion to impose a shorter sentence than the
21  minimum mandated by the Sentencing Reform Act. But since Martinez-Castro was
    an adult when he committed the crime, the court in fact had no such discretion.
22  Martinez-Castro relies on *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015),
    but this court held there only that the youthfulness of a young adult defendant may
23  be a mitigating factor justifying an exceptional sentence below the standard range.
    *Id.* at 695-96. The court did not suggest that youthful mitigation may justify

REPORT AND RECOMMENDATION - 17

1

2

3

4

5

departure from mandatory sentencing provisions. *See State v. Brown*, 139 Wn.2d 20, 29, 983 P.3d 608 (1999) (mandatory consecutive firearm enhancements may not be imposed concurrently as a form of mitigated exceptional sentence), *overruled in part on other grounds*, *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). Such departure is available for juvenile defendants tried in adult court. *Houston-Sconiers*, 188 Wn.2d at 34. But *Houston-Sconiers* does not apply to young adult offenders. *In re Pers. Restraint of Young*, 21 Wn. App. 2d 826, 831-32, 508 P.3d 687 (2022). Martinez-Castro thus identifies no sentencing error.

(State Court Rec., Ex. 13 at 1-2.)

6

7

8

9

10

11

12

13

14

Though Petitioner now raises his claim of sentencing error in federal terms, the record demonstrates that his claim involves the interpretation and application of state sentencing law. The Court of Appeals and Washington Supreme Court both made clear that Petitioner was properly sentenced in accordance with Washington state law because he was an adult offender, and thus, there was no error. This Court must defer to the state courts' interpretation and application of Washington law regarding the appropriateness of Petitioner's sentence. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

15

16

17

18

19

20

21

22

23

Moreover, the United States Supreme Court has not clearly established that an individual's youth—when tried as an adult—must be considered as a mitigating factor for sentencing purposes. In *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court held the Eighth Amendment prohibits sentences of life without parole for juveniles convicted of non-homicide crimes. In 2012, the Supreme Court extended that rule finding that the Eighth Amendment prohibits mandatory sentences of life imprisonment for juveniles convicted of homicide without consideration of mitigating circumstances. *Miller v. Alabama*, 567 U.S. 460 (2012). Since those decisions, the Washington Supreme Court has gone on to hold that the Washington State Constitution prohibits mandatory sentences of life without parole for

REPORT AND RECOMMENDATION - 18

"youthful" offenders, including those aged 18, 19, and 20. *See In re Monschke*, 197 Wn.2d 305 (Wash. 2021). But the United States Supreme Court has not held, nor clearly established a rule, that state courts must consider an individual's "youthfulness" when sentencing an adult.

Accordingly, because Petitioner fails to demonstrate that the state court adjudication of this claim was contrary to, or an unreasonable application of clearly established federal law, Petitioner's federal habeas petition should be denied with respect to his third ground for relief.

## V.    CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court recommends that a certificate of appealability be denied as to all claims.

## VI.    CONCLUSION

For the foregoing reasons, this Court recommends that Petitioner's amended habeas petition (dkt. # 20) be DENIED and this action be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be DENIED as to all claims. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this

Report and Recommendation. Failure to file objections within the specified time may affect your

right to appeal. Objections should be noted for consideration on the District Judge's motion

calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall

be filed no later than **fourteen (14)** days after service and filing of objections. If no timely

objections are filed, the matter will be ready for consideration by the District Judge on **January**

**19, 2024.**

       The Clerk is directed to send copies of this Report and Recommendation to the parties

and to the Honorable Jamal N. Whitehead.

       Dated this 27th day of December, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20